UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICHOLE B.,[1]

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

23-CV-0366-LJV
DECISION & ORDER

On April 27, 2023, the plaintiff, Nichole B. ("Nichole"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  *Id.*  On July 26, 2023, Nichole moved for judgment on the pleadings, Docket Item 4-1; on September 25, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7-1; and on October 10, 2023, Nichole replied, Docket Item 8.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Nichole applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Nichole's motion in part and denies the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.     **THE ALJ'S DECISION**

The ALJ found that Nichole had not been under a disability from March 5, 2019, through June 2, 2022, the date of his decision.  *See* Docket Item 3 at 15, 24.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.*

At step one, the ALJ found that Nichole "ha[d] not engaged in substantial gainful activity since April 21, 2021, the amended alleged onset . . . date." *Id.* at 17.  At step two, the ALJ found that Nichole suffered from two severe, medically determinable impairments: "bipolar II disorder and generalized anxiety disorder."  *Id.*

At step three, the ALJ found that Nichole's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 18-19.  More specifically, the ALJ found that Nichole's impairments did not meet or medically equal listing 12.04 (depressive, bipolar, or related disorders) and 12.06 (anxiety and obsessive-compulsive disorders)*. Id*.  In assessing Nichole's mental impairments, the ALJ found that Nichole was: (1) moderately impaired in understanding, remembering, or applying information; (2)

3

moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing herself.  *Id.* at 18.

The ALJ then found that Nichole had the residual functional capacity ("RFC")[4] to "perform a full range of work at all exertional levels" except that:

> [Nichole] can perform simple, routine, and repetitive tasks; [she] is able to perform simple work-related decisions [sic]; [she] [i]s [occasionally] able to interact with [s]upervisors; [she] [i]s [occasionally] able to interact with [c]oworkers; [she] is [occasionally] able to interact with the public; [and she is] able to tolerate few changes in a routine work setting defined as occasional changes to the worksite and routine.

*Id.* at 19.

At step four, the ALJ found that Nichole no longer could perform any past relevant work.  *Id.* at 22.  But given Nichole's age, education, and RFC, the ALJ found at step five that Nichole could perform substantial gainful activity as a power screw operator, cleaner, or price marker.  *Id.* at 24; *see Dictionary of Occupational Titles* 699.685-026, 1991 WL 678865 (Jan. 1, 2016); *id.* at 323.687-014, 1991 WL 672783 (Jan. 1, 2016); *id.* at 209.587-034, 1991 WL 671802 (Jan. 1, 2016).  Therefore, the ALJ found that Nichole had not been under a disability or entitled to SSI or DIB from March 5, 2019, through June 2, 2022.  *See* Docket Item 3 at 24.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II.     ALLEGATIONS

Nichole argues that the ALJ erred in two ways. Docket Item 4-1 at 1. First, she argues that the ALJ improperly evaluated the opinion of Licensed Master Social Worker ("LMSW") Rachel Wroblewski. *Id.* at 11-14. Second, she argues that the ALJ relied on his own lay opinion in formulating the RFC and "failed to tether the RFC to any evidence in the record." *Id.* at 14. This Court agrees that the ALJ erred and, because that error was to Nichole's prejudice, remands the matter to the Commissioner.

## III.    ANALYSIS

### A. LMSW WROBLEWSKI'S OPINION

For claims filed after March 27, 2017, such as Nichole's, the ALJ evaluates medical opinion evidence under the framework in 20 C.F.R. § 416.920c. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Under the new regulations, the ALJ will consider opinions from a claimant's medical sources but "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s]." 20 C.F.R. § 416.920c(a).

Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions" in light of the regulatory factors. *Id.* § 416.920c(b), (c)(1)-(5). In explaining a decision, the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that '[ ] a reviewing court[ ] may assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review.'" *Craft v. Astrue,*

539 F.3d 668, 673 (7th Cir. 2008) (alterations omitted) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)).

The Code of Federal Regulations lists five factors that the ALJ will consider when weighing medical opinions: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion of and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the source's specialization; and (5) any other factors "that tend to support or contradict" the opinion. *Id.* §§ 416.920c(1)-(5). The ALJ is required specifically to "explain how [he or she] considered the supportability and consistency factors" because they are "the most important factors," and the ALJ "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.* § 416.920c(b)(2); *see also Harry B. v. Comm'r of Soc. Sec.,* 2021 WL 1198283, at *7 (N.D.N.Y. Mar. 30, 2021).

"Supportability" and "consistency" are terms of art defined by the regulations. As to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see Spottswood v. Kijakazi,* 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024) (summary order) (characterizing "supportability" as "how well supported an opinion is by medical evidence and the explanations given in the opinion."). As to "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from

6

other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2); *see Spottswood,* 2024 WL 89635, at *1 (characterizing "consistency" as "how consistent an opinion is with other evidence in the record").

On September 16, 2020, LMSW Wroblewski completed an employability assessment form, opining that Nichole was moderately limited in understanding and remembering instructions, maintaining attention/concentration, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior without exhibiting behavior extremes, and maintaining basic standards of personal hygiene and grooming.  Docket Item 3 at 933.  LMSW Wroblewski also found that Nichole was "very limited" in carrying out instructions and in functioning at a consistent pace in a work setting.  *Id.*  And LMSW Wroblewski opined that Nichole is "[e]asily overwhelmed by external stressors, [has] continued lability of emotions and mood disturbances, fatigue, sleep disturbance, [and] impaired concentration."  *Id.*

About 18 months later, on March 28, 2022, LMSW Wroblewski completed a mental RFC questionnaire addressing Nichole's mental abilities and aptitude.  *See* Docket Item 3 at 950-54.  LMSW Wroblewski reported that Nichole had been attending weekly counseling and monthly medication management appointments with the current team since January 2020.  *Id.* at 950.  She opined that Nichole's ability to remember work-like procedures, understand and remember very short and simple instructions, make simple work-related decisions, ask simple questions or for assistance, accept instructions and respond appropriately to criticism, get along with co-workers, and be

aware of normal hazards and take appropriate precautions was "limited but satisfactory."  *Id.* at 952.

On the other hand, LMSW Wroblewski found that Nichole was "seriously limited" in dealing with the stress of semiskilled and skilled work; understanding, remembering, and carrying out detailed instructions; and setting realistic goals or making plans independent of others.  *Id.* at 953.  And LMSW Wroblewski found that Nichole was "unable to meet competitive standards" in maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or near others without being distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; and dealing with normal work stress.  *Id.*  LMSW Wroblewski concluded that Nichole's impairments would cause her to be absent from work more than four days each month.  *Id.* at 954.

Under the new regulations, therapists and social workers without clinical designation are not considered medical sources because they are not "licensed . . . healthcare worker[s]."  *See* 20 C.F.R. § 416.902(i), (j).  Rather, they are considered nonmedical sources whose opinions are not subject to the same consideration as those of medical sources.  *See id.* § 416.920c(d) (providing that an ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c) in this section"); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5850 (noting that "nonmedical sources" include "counselors . . . social workers, and public and private social welfare personnel.").

Nevertheless, "[a]n ALJ is not free to disregard a medical opinion solely on the basis that the opinion is from a nonmedical source." *Allen v. Comm'r of Soc. Sec.,* 321 F. Supp.3d 327, 336 (W.D.N.Y. 2018) (internal citations omitted).  The regulations provide that "[b]ecause symptoms . . . are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account."  20 C.F.R. § 416.929(c)(3); *see also id.* § 416.929(a) (providing that the ALJ "will consider . . . any description [the claimant's] nonmedical sources may provide about how [the claimant's] symptoms affect [the claimant's] activities of daily living and [the claimant's] ability to work.").  What is more, an ALJ may not "ignore[ ] or mischaracterize[ ] medical evidence or cherry-pick[ ] evidence that supports his RFC determination while ignoring other evidence to the contrary."  *Jackson v. Kijakazi,* 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022).

In formulating Nichole's mental RFC, the ALJ found LMSW Wroblewski's opinions only "partially persuasive."  Docket Item 3 at 22.  As his explanation for that conclusion, the ALJ said that "the treatment record overall supports moderate limitations across the [paragraph] 'B' criteria domains, with mental status and cognition generally intact in examinations."  *Id.*  He also noted that Nichole "attend[ed] outpatient care during the period of adjudication and treatment records not[ed] somewhat limited compliance with treatment planning."  *Id.*

That explanation is little more than a conclusion.  Indeed, the ALJ never even mentioned how well LMSW Wroblewski supported her opinions with "objective medical

9

evidence and . . . explanations."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Likewise, while the ALJ paid lip service to consistency when he referenced "the treatment record overall" and "mental status and cognition . . . examinations," Docket Item 3 at 22, he never explained how the record supports only moderate limitations.

While the ALJ may not have been required to address the supportability and consistency of LMSW Wroblewski's nonmedical source opinion, the failure to do so here does not provide this Court with "an accurate and logical bridge between his recitation of the facts and the conclusions he reached." *Smith v. Comm'r of Soc. Sec.,* 2020 WL 4904956, at *3 (W.D.N.Y. Aug. 19, 2020).  Moreover, while an ALJ is permitted to make "common sense judgments," that "does not typically extend to the determination of mental limitations, which are by their very nature 'highly complex and individualized.'" *Dye v. Comm'r of Soc. Sec.,* 351 F. Supp. 3d 386, 392-93 (W.D.N.Y. 2019); *see also Jennifer S.-M. v. Comm'r of Soc. Sec.,* 2023 WL 3455435, at *9 (W.D.N.Y. May 12, 2023) (remanding where the "ALJ rejected all of the opinion evidence regarding Plaintiff's mental functioning and, therefore, lacked any guidance from a medical professional to ensure that the RFC finding adequately accounted for [p]laintiff's mental limitations." (citation omitted)).  For both those reasons, the ALJ's analysis of Nichole's mental limitations was flawed.

What is more, the ALJ did not even try to explain why he rejected LMSW Wroblewski's opinions that Nichole "would be seriously limited or unable to meet competitive standards in nine of the sixteen mental abilities and aptitudes needed to do unskilled work" or her "suggesti[on]" that Nichole would be absent from work more than "four days per month."  Docket Item 3 at 22.  And the ALJ's reliance on Nichole's

"inconsistent attendance and medication use" in discounting the severity of her mental impairments, Docket Item 3 at 22, does little to support the RFC determination. *Rucker v. Kijakazi,* 48 F.4th 86, 93 (2d Cir. 2022) (ALJ's reliance "on attendance at medical appointments is unhelpful in determining whether an individual with significant psychiatric issues can consistently show up and successfully function in a work environment."). Indeed, although the ALJ was permitted to consider Nichole's inconsistent medication use, he could not selectively rely on that without addressing the weight of the evidence supporting Nichole's continued serious psychiatric symptoms. *See Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (ALJ improperly relied on the record of limited improvement and noncompliance with treatment and did not consider plaintiff's continuous reports of serious psychiatric symptoms even after years of treatment and steady increase in medication).

The Commissioner concedes that "the ALJ did not discuss explicitly the supportability of [LMSW] Wroblewski's opinions," nevertheless arguing that "the ALJ's rationale can be gleaned from the decision as a whole." Docket Item 7-1 at 7. But that is both conclusory and an improper post hoc rationalization and therefore insufficient to support the RFC. *See Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (internal quotation marks omitted).

Moreover, the medical opinions found simply that the record was insufficient to determine Nichole's limitations.[5] So without LMSW Wroblewski's opinion, there was

---

[5] For example, on September 24, 2020, Gary Ehlert, M.D., completed a medical evaluation and determined there was insufficient evidence to conclude whether Nichole had a severe medical impairment. Docket Item 3 at 68, 70. On April 23, 2021, V.

11

nothing upon which the ALJ could have based the mental RFC.  And indeed, the ALJ never addressed the evidence on which he relied.

An ALJ may not substitute his or her lay judgment for the opinions of medical professionals, and when there is no medical opinion to support a claimant's ability to perform a certain function, the ALJ cannot create an RFC from whole cloth.  See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled [sic] that the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion." (internal citations and quotation marks omitted)).  In other words, because "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, . . . an ALJ's determination of [a claimant's] RFC without a medical advisor's assessment is not supported by substantial evidence." Ortiz v. Colvin, 298 F. Supp.3d 581, 586 (W.D.N.Y. 2018) (citation omitted).  And here, it is unclear how the ALJ concluded that Nichole could maintain regular attendance, work in coordination with or near others without being distracted, and complete a normal workday and workweek without interruptions from psychologically based symptoms when the only opinion in the record suggested that she could not.  Therefore, because the ALJ did not "tether his RFC to a medical opinion," this Court cannot find that the RFC was supported by substantial evidence.  See John G. v. Saul, 2021 WL 118313, at *4 (W.D.N.Y. Jan. 13, 2021) (citing Garcia Medina v. Comm'r of Soc. Sec., 2019 WL 1230081, at *2 (W.D.N.Y.

---

Baronos. M.D., reported that there was "no way to determine [Nichole's] current level of functioning [and] there is insufficient evidence to decide this claim." Id. at 86.  On April 26, 2021, S. Bhutwala, Ph.D., also found there was insufficient "evidence currently in [the] file to determine [a] presence of a current severe psychiatric impairment." Id. at 88.

Mar. 15, 2019) ("The [RFC] here was not tethered to any particular medical opinion evidence.  Indeed, the ALJ gave 'limited weight' to all three of the opinions she addressed.  Because the ALJ here did not give controlling or substantial weight to any opinion that supported the RFC, it is unclear precisely where the limitations set forth in the RFC came from and why they did not go further.").

In sum, although the ALJ was not required to accept everything about which LMSW Wroblewski opined, *see Younes,* 2015 WL 1524417, at *8, he was required to support his assessment of the opinion with record evidence and to explain his reasoning in discrediting the portion favorable to Nichole.  The ALJ failed to do that and instead did little more than broadly state conclusions.  Such "terse and conclusory analysis is inadequate because it frustrates this Court's meaningful review."  *See Darla W. v. Comm'r of Soc. Sec.,* 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021); *see also Gorny v. Comm'r of Soc. Sec.,* 2018 WL 5489572, at *4 (W.D.N.Y. Oct. 29, 2018) (concluding that where the ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported his RFC findings," his decision leaves the reviewing court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review").  Because the ALJ did not adequately evaluate the opinion evidence, and because the ALJ did not adequately explain his reasoning in discounting LMSW Wroblewski's opinion, remand is required.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 7-1, is DENIED, and Nichole's motion for judgment on the pleadings, Docket Item 4-1, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     August 5, 2024
           Buffalo, New York

                                              *Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE